# UNITED STATES DISTRICT COURT
## for the SOUTHERN DISTRICT OF INDIANA,
## INDIANAPOLIS DIVISION

| | |
|---|---|
| **ROBERT E. DAVIS,** | ) |
| **Plaintiff,** | ) |
| *vs.* | ) CAUSE NO. 1:12-cv-1101-SEB-DKL |
| **CAROLYN W. COLVIN, Commissioner of Social Security,** | ) |
| **Defendant.** | ) |

## ENTRY

In May 2009, plaintiff Robert Davis applied for child's insurance benefits and supplemental security income based on disability under the Social Security Act, alleging that he became disabled in August 2001. The defendant Commissioner of Social Security finally denied his application in June 2012 and he now seeks judicial review of that decision.

## Standards

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S.

389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 905. A person will be determined to be disabled only if her impairments "are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. § 423(a)(3)(G).

To be eligible for child insurance benefits, a claimant over the age of 18 must show that, at the time of filing his application, he was unmarried, he was dependent on an insured parent at the time of his or her death, and he was under a disability that began before the age of twenty-two and continued through the date of application. 42 U.S.C. § 402(d). In Mr. Davis's case, that means that he must show that he was under a disability from at least May 12, 2005 (day before his twenty-second birthday) through May 8, 2009 (date of application). Mr. Davis alleges that he became disabled in August 2001.

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further. At the first step, if the applicant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the applicant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the applicant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the

3

next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy. At the fourth step, if the applicant has the RFC to perform her past relevant work, then she is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work that exists in significant numbers in the national economy. 42 U.S.C. § 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at her assigned RFC level, then the grids may not be used to determine disability at that level; a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The

grids result, however, may still be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

**Background**

Mr. Davis's application was denied on initial and reconsideration reviews. He requested and received a hearing before an ALJ in February 2011. He testified at the hearing and was represented by current counsel. The ALJ issued his decision in March 2011.

---

[1] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

Mr. Davis was born on May 13, 1983, making him 18 years old on his alleged onset date (August 15, 2001) and a few days shy of 26 years old when he applied for benefits (May 8, 2009).

The ALJ initially found that Mr. Davis had not yet attained the age of twenty-two years as of his alleged onset date. At step one of the five-step sequential-evaluation process, the ALJ found that Mr. Davis had not engaged in substantial gainful activity since his alleged onset date. At step two, he found that Mr. Davis had not established a severe impairment prior to his twenty-second birthday (May 13, 2005). He noted that the earliest medical evidence in the record dates to 2008. Since Mr. Davis's application date (May 8, 2009), however, the ALJ found that he has the severe impairments of tremors of the hands and head; obesity; bilateral patellofemoral syndrome; osteoarthritis of the right ankle; and social anxiety. At step three, he found that Mr. Davis does not have an impairment or combination of impairments that satisfy any of the Listings of Impairments.

For steps four and five the ALJ determined Mr. Davis's RFC. He found that Mr. Davis has the RFC for "light" work with additional postural, environmental, and activity restrictions, and that his work tasks should be simple and repetitive and he should have no more than superficial interaction with the general public, coworkers, and supervisors. At step four, the ALJ found that Mr. Davis does not have any past relevant work. Finally, at step five, relying on the testimony of a vocational expert because of Mr. Davis's inability to perform the full range of "light" work due to his additional non-exertional impairments,

the ALJ found that there were jobs that exist in significant numbers that Mr. Davis could perform and, therefore, was not disabled from August 15, 2001, his alleged onset date, through the date of decision.

The Commissioner's Appeals Council denied Mr. Davis's request to review the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner on Mr. Davis's application and the one that this Court reviews.

## Discussion

Mr. Davis argues two errors in the ALJ's decision.

**Failure to call medical expert to determine onset date.** At step two, the ALJ found that the record evidence did not establish the existence of a severe impairment before Mr. Davis's twenty-second birthday (up to May 12, 2005) and noted that the earliest medical evidence dates to 2008. Mr. Davis argues that the ALJ erred by failing to call a medical expert to opine on the date that his impairments became severe. He points to medical and other evidence that record only Mr. Davis's complaints or reports that his symptoms and impairments had been diagnosed or had been occurring prior to his twenty-second birthday. But these reports or statements are beside the point. In addition to not *proving* that he had *severe* impairments before his twenty-second birthday, what Mr. Davis must show is that he was *disabled* from before his twenty-second through the date of his application, not that he had severe impairments. The onset date of severity does not help

7

him.  The ALJ found that Mr. Davis was not disabled at any relevant time and Mr. Davis does not challenge this dispositive finding.  Mr. Davis has failed to show that the ALJ committed error.

**Failure to assign weight to the opinion of the vocational rehabilitation specialist.**  In November 2010, Michael L. Blankenship, a vocational rehabilitation specialist, conducted dexterity testing on Mr. Davis.  (R. 273-74.)  Mr. Blankenship opined that, based on his interview with Mr. Davis, his review of the testing results, and his review of the medical evidence (not identified), Mr. Davis "is not a candidate for employment."  He wrote that Mr. Davis "does not have the residual functional capacity to perform tasks for eight hours per day that require dexterity, strength, grip, and rotation of the wrists.  He continues to complain of pain in his hands and wrists which limit him with regard to duration and consistency of performance.  As a result, he is unable to perform substantial gainful activity."  (R. 274.)  The ALJ addressed Mr. Blankenship's opinion:  "While I note a vocational evaluation in November 2010 using the Purdue Pegboard test suggested the claimant was incapable of competitive employment, I do not find this one-time vocational assessment consistent with the overall record, especially the medical evidence."  (R. 28.)

Mr. Davis argues that the ALJ erred by (1) failing to explain the amount of weight he did assign to this opinion or the reasons for giving that weight; (2) ignoring the opinion because it was from a non-medical source; and (3) refusing to permit questioning of the vocational expert at the hearing on the results of Mr. Blankenship's tests.

8

Mr. Davis argues that, in failing to more fully articulate his analysis of Mr. Blankenship's report — specifically the weight that he accorded it and the reasons for doing so — the ALJ failed in his duty to articulate his credibility determinations. That duty of specific and detailed articulation applies to ALJs' determinations of a claimant's statements about the severity of their symptoms and the limitations caused thereby. See S.S.R. 96-7p. Mr. Davis cites no authority for extending that enhanced duty to all statements in the record. The ALJ explained that he did not fully credit Mr. Blankenship's opinion because it was a one-time assessment and was not consistent with the overall record, especially the medical evidence. The ALJ articulated his review of the medical and non-medical evidence in the record and summarized his evaluations of it, which appears immediately before the above-quoted passage wherein he evaluated the report:

> Physical examination findings in the record have generally been within normal limits. The claimant has normal grip strength. The consultative examinations noted handgrips were 5/5 bilaterally and fine-finger manipulation and rapid succession motions of the finger-to-thumb and finger-to-nose were intact and adequate for employment. Clinical observations do not document significant tremor. Further, the claimant's treatment has been intermittent and he has had limited follow up with the specialists that have tried to treat him.

(R. 28.) The Court is more than able, from this discussion, to trace the path of the ALJ's grounds and reasoning for according little weight to Mr. Blankenship's report and Mr. Davis has not shown how it was error for the ALJ to not accord it greater weight.

It is clear that the ALJ did not "ignore" Mr. Blankenship's report because it was from a non-medical source. He identified it, noted its contents and its opinion, and provided his

9

evaluation of it.

Mr. Davis states only in passing that the ALJ did not allow his counsel to question the hearing's vocational expert regarding the Purdue Pegboard test that Mr. Blankenship administered, (*Memorandum of Plaintiff* [doc. 19] at [15]), but he does not develop any argument therefrom. Specifically, he does not describe what information he sought to elicit regarding the test, what the answers might have been, or how the answers might have supported his argument that the ALJ committed error or how they would have supported his overall argument that he is disabled. Undeveloped and/or conclusory arguments are forfeited, as this one is.

## Conclusion

Plaintiff has not shown that the Commissioner's decision is not supported by substantial evidence or is compromised by legal error. Therefore, the Commissioner's denial of Plaintiff's application is **affirmed**.

IT IS SO ORDERED.

Date: 03/04/2014

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.